## ROWAN vs. HUTCHISSON.

[DETINUE AGAINST SHERIFF FOR SLAVES TAKEN UNDER ATTACHMENT.]

1. *Declarations of ownership, unaccompanied by possession, not admissible evidence.*—Declarations of ownership of a slave, made by a party who is not shown to

Rowan v. Hutchisson.

have had possession at the time, are not admissible evidence for him in a suit involving the title.

2. *Declarations of slaves inadmissible on question of ownership.*—The declarations of an old female slave, who lived at the same house with her grandchildren, respecting her possession of them, are not admissible evidence on the question of ownership, since (other reasons aside) she cannot have such possession as will authorize their admission.

3. *Admissibility of other evidence to prove ownership.*—In detinue against a sheriff for slaves taken under attachment, the question was whether the slaves belonged to plaintiff, or to his brother, the defendant in attachment, who had gone to California before the levy of the attachment, leaving the slaves in the house in which he last resided: *Held*, that defendant, to repel the idea of abandonment on the part of said defendant in attachment, and to show title in him, might prove that, while in possession of said slaves, he had mortgaged them ; that when the steamboat on which he left was about quitting the wharf, he declared his intention soon to return ; and that plaintiff, after his brother's departure, had returned an assessment under oath of his own property, in which said slaves were not included.

4. *Deed received in evidence as an admission in writing.*

5. *Charge respecting the effect of three years possession of personal property, under statute of frauds, held correct.*

6. *When damages assessed to defendant.*—If the plaintiff in detinue, by giving the statutory bonds, causes the possession of the slaves sued for to be taken from the defendant and turned over to himself, the jury trying the case are authorized by the act of 1848, " to amend the law in relation to the action of detinue," (Pamphlet Acts 1847–8, p. 82,) to assess the damages and the value of the slaves.

7. *Judgment on verdict for defendant.*—Issues being joined on the pleas of *non detinet* and justification under legal process, a verdict finding the defendant not guilty, and assessing the damages and the separate value of the slaves, is sufficient under this statute to support a judgment in his favor.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

DETINUE by B. C. Rowan against James F. Hutchisson, for two slaves—Tom, about seven years old, and Mary (*alias* Louisa), about nine years old ; pleas, *non detinet*, and justification under certain attachments sued out by third persons against Michael M. Rowan, a brother of plaintiff, and levied by the defendant, as sheriff of Mobile county, on said slaves as the property of said Michael. The record shows that the plaintiff executed the statutory bond, and that the slaves were thereupon delivered into his possession.

On the trial of the cause, as appears from the bill of exceptions, the plaintiff offered the deposition of his sister, Maria

L. Rowan; attached to which, as an exhibit, was a bill of sale, signed by A. A. Rowan, a brother of plaintiff, dated at Courtland, Alabama, April 27, 1843, and purporting to convey to plaintiff, in consideration of the sum of $1,350, the following slaves: Mary, about 44 old; Susan, about 18 years old, and her infant child, Mary; Daniel, about 15 years old; and Chaney, about 12 years old. This witness testified, that Tom and Mary (the slaves here sued for) are the children of said woman Susan, who was the daughter of said Mary mentioned in said bill of sale; and that said bill of sale was in the handwriting of said A. A. Rowan. The bill of exceptions states, that the plaintiff also offered said bill of sale in evidence, " without any other evidence thereof than that contained in said deposition."

" In 1844," as the bill of exceptions then states, " Susan and some other negroes were landed at the wharf in Mobile, from a steamboat, and were taken by plaintiff, he claiming them as his own, into the country about three miles from Mobile, to the place where he and his brother Michael were residing together. A. A. Rowan, at and previous to that time, resided in Huntsville, Ala. It appeared that plaintiff married in 1845, or 1846, and Michael M. Rowan removed from the country into the city of Mobile; and a few days afterwards, Susan, Mary, Tom, and Louisa were brought into town, (but by whom was not shown,) to the house Michael lived in,— Mary being his cook, and the others waiting on him. One Jennett testified, on behalf of plaintiff, that he knew the negroes in controversy at plaintiff's house in the country, and had seen them there often six or seven years ago; that Michael M. Rowan then resided there, and that he had not (so far as recollected) seen the slaves there since Michael left; that he had often been at plaintiff's house, and was connected with him by marriage; that Michael went to California two or three years before this trial, where he now is; that he had often seen said slaves living in a house on Cedar street, Mobile, and had seen them in the possession of plaintiff since this suit was brought."

One Meaher testified, on behalf of plaintiff, that he knew said slaves, who resided near him on Cedar street a year or two since; that plaintiff, in going in and out of the city on his

route home, passed his house and that in which the slaves lived almost daily; that plaintiff stopped at his house very frequently, and sometimes stopped at the house where the slaves lived, and frequently spoke to them on such occasions; and that sometimes, though less frequently, witness also saw Michael Rowan on the premises, who was engaged as a clerk in the house of Desha & Co., which kept him occupied from an early hour in the morning until late at night. "Plaintiff then proposed to ask this witness to state any declarations he had heard (if any), while said slaves were residing in Cedar street, made by plaintiff in regard to his ownership; to which question defendant objected; which objection was sustained by the court, and plaintiff excepted. Plaintiff then proposed to prove the declarations of said woman Mary, as to how she held possession of Tom and Louisa at the time; which question was objected to, the objection sustained by the court, and plaintiff excepted."

"One Sturdevant testified, for plaintiff, that he knew the slaves, had frequently seen them at plaintiff's house, and did not know until a year or two since that they were in the city; that he was census-taker in 1850, and as such called upon plaintiff; that plaintiff gave in his slaves at the time, having called them forward for witness to see them, at plaintiff's house; was not positive that Tom and Louisa, or Mary, or Susan, were there; was with plaintiff on several occasions when he stopped at Meaher's house, and saw the slaves at the house on Cedar street with the slave Mary. Plaintiff proposed to ask this witness for his (plaintiff's) declarations, or the declarations of the negroes, in regard to the ownership of said slaves when witness thus saw them in Cedar street; which question was objected to, the objection sustained by the court, and plaintiff excepted. Plaintiff then proposed to prove by him the declarations of the slave Mary, upon the same point; which was objected to, the objection sustained, and plaintiff excepted.

"On the part of defendant it appeared, that soon after M. M. Rowan separated from plaintiff, (they having kept house together as bachelors until the marriage of the latter,) the slaves referred to (Mary, Susan, Chaney, and the children in controversy) also came to town, and removed from house to

house with M. M. Rowan as his servants,—he occupying such houses, and lodging in them at night, and taking his breakfast and supper there; that two of them died in the city in the possession of said Michael, and the others remained where he left them; that plaintiff, as assessor of the State and county taxes in the year 1849, had assessed to said Michael, in the city of Mobile, five slaves about or nearly corresponding in ages with those named; that in 1852, when such of said slaves as were then living were still in Mobile, and after said Michael had gone to California, plaintiff was one of three assessors of taxes in the city of Mobile for that year; and as such did not render in or assess himself any slaves, although he rendered in and assessed to himself other property in said city; and the books of these assessments, after one of them was shown to have been made by the plaintiff, as assessor, in his own handwriting, and the others to have been made under the supervision of plaintiff and the other assessors, and that the assessments of property to plaintiff were made upon his own information, and given when all three of the assessors were together, were offered on behalf of defendant, so far as these assessments were set forth, and were objected to by the plaintiff. The objection was overruled by the court, and thereupon plaintiff excepted.

"Defendant then offered to prove, that Michael Rowan, in 1849, mortgaged these slaves to the Bank of Mobile, to show an act of ownership by him; to which the plaintiff objected, his objection was overruled, and plaintiff excepted.

"It having been proved by plaintiff that nine or ten slaves had been assessed as his property in the county, defendant offered in evidence a deed from plaintiff to one A. H. Ryland, conveying to him nine slaves other than those in controversy, as security for the performance of a contract; to which plaintiff objected as irrelevant, but his objection was overruled, and he excepted.

"Defendant proved the execution of two notes, amounting to $1,500, made by said Michael Rowan in the year 1849, as those on which one of the attachments issued, by virtue of which defendant, as sheriff, had taken the negroes in controversy into possession, and offered them in evidence; to which plaintiff objected, but the objection was overruled, and plaintiff excepted.

"Defendant then proved, that, as sheriff of Mobile county, he had levied two attachments upon the negroes in question; that he found them where Michael Rowan had left them when he left Mobile; and their value. He then offered to prove the declarations of said M. M. Rowan, while on the steamboat, just as the steamer was leaving the wharf, when he left for California, as to his intention soon to return to Mobile, and that he was not leaving to remain away permanently; to which plaintiff objected, the objection was overruled, and plaintiff excepted.

"It was admitted, that plaintiff was now, and had been since a short time after the commencement of this suit, in possession of the slaves in controversy, under the bond which he had given to obtain them.

"The court charged the jury, among other things, that if they believed from the evidence that the slaves sued for were the property of Michael Rowan, or of Michael and plaintiff jointly, or that Michael had been in possession of them, as his own, for three years next before the levy of the attachment, without any registration or record having been made, or notice had of any claim or right of plaintiff in them, they ought to find for the defendant; and that if they found for the defendant, they ought to find what was the value of each slave, and also what damage (if any) defendant had sustained by plaintiff's possession of them since the commencement of this suit. To these charges the plaintiff excepted."

The jury returned a verdict in these words: "We, the jury, find the defendant not guilty, and assess the damages $963 60. We assess the value of the slaves as follows—Tom $500, Louisa $400"; and 'on this verdict the court rendered judgment in favor of the defendant, for $43 60 damages, and the slaves or their alternate value as assessed by the jury.

The rendition of this judgment, together with all the other rulings of the court above stated, is now assigned for error.

E. S. DARGAN and P. HAMILTON, for the appellant.

PERCY WALKER, contra.

RICE, J.—The evidence does not show that the slaves ever were in the possession of the plaintiff, after they went

into the service and control of Michael, in the city of Mobile, in 1845 or 1846 ; but, on the contrary, there is a preponderance of evidence in favor of the proposition, that the possession of these slaves by Michael was continuous from 1845 or 1846, until the levy of the attachments, made after he had gone to California. All the declarations of the plaintiff as to his ownership of the slaves, offered in evidence by him, were properly rejected, upon the ground that at the time he made these declarations he was not in possession of the slaves. Thomas v. De Graffenreid, 17 Ala. 603.

Upon the same ground, (without alluding to any other,) the declarations of the slave Mary, as offered in evidence by the plaintiff, were properly excluded. It is clear from the evidence, that although the other slaves may have lived with Mary, or at the same house where she lived, yet she and the other slaves were under the control of Michael Rowan ; and that she had no possession of any of the slaves, which could authorize the court to admit any of her declarations as to ownership or possession, as evidence for the plaintiff in this cause.

Under the issue in this case, the defendant had the right to prove, that although the bill of sale for the slaves, upon its face, showed the title to them to be in the plaintiff, yet the actual title and ownership were in Michael Rowan, and that he had not abandoned them. In this point of view, it was proper to allow the evidence as to the assessments of property to the plaintiff made upon his own information in 1852, after Michael had gone to California ; and also the evidence that Michael, in 1849, and whilst he had possession of the slaves, had mortgaged them to the Bank of Mobile ; and that when he left for California, just as the steamer was leaving the wharf, he declared his intention soon to return to Mobile and not to remain away permanently. This evidence, in connection with the other evidence in the cause, certainly tended to show that the slaves were the property of Michael, and not the property of the plaintiff, and that Michael had not abandoned the slaves.

After the plaintiff had proved that nine or ten slaves had been assessed to him in Mobile county, it was proper to allow the defendant to prove any admission of plaintiff that he

owned at the time nine slaves other than those in controversy. The deed of plaintiff to A. H. Ryland, read in evidence, was an admission in writing by plaintiff to that effect, and was therefore admissible.

We cannot conceive of any good ground of objection to the introduction of the two notes of Michael Rowan, after it had been proved that they were executed by him in 1849, and that these were the notes on which one of the attachments issued, by virtue of which the defendant, as sheriff of Mobile county, had taken the negroes in controversy into possession.

The only objection made by the argument for appellant to the charge of the court, is, that in effect, it excludes an examination of plaintiff's title to the slaves. Concede this objection to be true in point of fact, yet it is unavailing in point of law; for, although the title to the slaves was in the plaintiff, yet, if he permitted them to remain in possession of his brother Michael for three years next before the levy of the attachment, and as shown in the evidence and supposed in the charge, he could not recover in this case.

When, as in this case, the plaintiff in an action of detinue, by giving the bonds required by statute, causes the possession of the slaves to be taken from the defendant and turned over to him, during the pendency of the suit, if the jury trying the case find for the defendant, they are authorized by the act of 10th of February, 1848, (Pamph. Acts of 1847–8, p. 82,) to assess the damages and the value of the slaves.

Bearing in mind this statute and the issues in this cause, it is clear, the verdict, finding the defendant not guilty, and assessing the damages and the separate value of the slaves, is sufficient to support a judgment in his favor. The fair and necessary construction of it is, that the defendant did not do what is alleged against him in the plaintiff's declaration, and that the jury negative the right of recovery asserted by the plaintiff. The jury could not have found such a verdict, unless the plaintiff had failed in proving his right to a recovery. The meaning of the finding is plain, and the only fault is in the form.—Tippen v. Petty, 7 Por. R. 218; Law v. Merrells, 6 Wend. R. 272; Hawks v. Crofton, 2 Burr. R. 698; Cro. Eliz. 157; 6 Com. Dig., tit. Pl. (S. 26.)

There is no ground for reversal. Judgment affirmed.